IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RUBY ESCALANTE,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. _____ |
| **HUMBLE INDEPENDENT SCHOOL DISTRICT** | § § § § | |
| **Defendant.** | § § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COMES NOW Ruby Escalante to bring this action against Humble Independent School District, ("Defendant" or "District") with this Original Complaint allege as follows:

**I.
PARTIES**

1. Plaintiff Ruby Escalante is an individual who resides in Harris County, Texas.

2. Defendant Humble Independent School District ("Humble ISD") is a municipality of the State of Texas. Humble ISD may be served by delivery to its Superintendent, Elizabeth Celania-Fagen, at its business address: 10203 Birchridge Drive, Humble, TX 77338.

3. Humble ISD funds and operates schools, which, along with its secretaries, data analyst, department managers, and other agents, is responsible for the implementation of the Humble ISD policies, procedures, practices, customs, the purported violated policies, as well as for the acts and omissions challenged by this suit.

**II.
JURISDICTION AND VENUE**

4. This court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 since Plaintiffs are suing for relief under 20 U.S.C. § 1682 and 42 U.S.C. §1983 Retaliation for

Exercising her First Amendment Right.

5. Venue is appropriate in the United States District Court; Southern District of Texas, Houston Division, since this district is the location of most of the events made the basis of Plaintiffs' claim for relief and where Defendant is located.

## III.
## NATURE AND PURPOSE OF THE ACTION

6. Ms. Escalante began at Humble ISD in 2005. Ms. Escalante worked as a para educator/secretary from August 1, 2005, until August of 2016 when Defendant promoted her to Administrative Assistant of Mr. Nolan Correra. Ms. Escalante was an exemplary employee; she either exceeded expectations or was proficient in all her employee evaluations.

7. In 2017, Ms. Escalante and Mr. Nolan Correra worked very well together. Mr. Correra was the Associate Superintendent, and she was the Division Secretary. Mr. Correra took Ms. Escalante to meet all the Directors, Assistants, and secretaries. They were all very welcoming and he was very professional and introduced Ms. Escalante as his "partner.". He spoke very highly of Ms. Escalante and made sure that everyone went to her if they needed anything and gave the impression that both he and Ms. Escalante would Assist in any way possible. It was a year of developing their work relationship, building loyalty and trust in each other.

8. During the morning meetings between Ms. Escalante and Mr. Correra, they discussed the calendar and schedule for the day, they naturally became very acquainted. They worked so well together, colleagues thought they knew each other in the past. Mr. Correra confided in Ms. Escalante on a number of occasions about work, about other Directors, Board of Trustees and the Superintendent. Things proceeded in an upward trajectory until June of 2020.

9. August of 2019, Ms. Escalante and Mr. Correra had a great start to the school year. Everyone was gearing up for school opening. Everyone was excited to open up all the campuses.

Ms. Escalante and Mr. Correra delivered tacos to each department as they had been doing since 2017. They delivered the tacos together as a team. At this time, both had gotten used to each other. Ms. Correra went so far as to call Ms. Escalante, "Lucy" as in Ricky and Lucy from the show, "I Love Lucy." He often made comments like "I'll be back Lucy" or" Hey Partner what do you think about or "Hey Partner can you pick up my girls from school if my meeting runs late?" Sometimes when he returned from a meeting he would say "I'm back Lucy," and Leticia Guerrero would giggle, she was in ear shot of all the conversations that took place there in the office. On occasion Ms. Escalante would pick Mr. Correra up at a nearby Toyota dealership when his car was being serviced at his request.

10. In September of 2019, Mr. Correra spoke to Ms. Escalante about adding another person to the Energy Management Department. Ms. Escalante expected to start the process of screening applicants, he just needed to reach out to Melissa Crizer who was the Manager of that department. It was typical for Mr. Correra to leave the interview details and hiring to the managers or directors of the departments. In October of 2019, the position was on hold because Ms. Crizer needed to make some corrections to the job description per Mr. Correra's instructions. Ms. Escalante knew Veronica Deleon was interested in the job and was going to apply for it. This month Mr. Correra also shared his personal issues at home with his family with Ms. Escalante.

11. Without warning in January of 2020 Mr. Correra began acting differently. He seemed edgy and upset all the time. The morning meetings were not as productive, and he seemed preoccupied with other things outside of work.

12. In March of 2020, the COVID pandemic caused schools to shut down. Ms. Escalante began working from home; however, Mr. Correra would never leave work. He continued to work long

hours. In April and May of 2020, the position was posted. Veronica Deleon applied as she was a certified energy management data specialist and was well qualified for the position.

13. May 2020: Things were moving forward in hiring the third person for the Energy Management department. Veronica Deleon applied for the position once she heard Defendant was accepting applications. Ms. Deleon was well qualified and well trained for the position. At the time she was a certified energy management data specialist.

14. Mr. Correra uncharacteristically participated in the interview process. Plaintiff arrived late for one of the interviews that morning. As they were walking towards the office, Mr. Correra was upset with Plaintiff and he asked, "what happened about the interviews I thought you were going to be here?" It was the first time that Mr. Correra spoke to Ms. Escalante in that manner when he didn't know if Plaintiff was late for an emergency or other reasons. The applicant in the conference room was Yvette Resendez; she came out of the conference room flustered and fanning her face with her hand. She said, "I have a dry mouth" so Plaintiff offered her some water. She stated she "left it on the table in the room" so Plaintiff retrieved it for her. She was smiling and seemed very happy.

15. June of 2020, Mr. Correra did not do anything to celebrate Ms. Escalante's birthday. In the past he would purchase flowers, a cake, a card, and give Ms. Escalante a thoughtful gift. This time, he sent no email, not even a text. This month Yvette Resendez was hired for the position of an hourly manual clerk for the Energy Management position. She had no experience or qualifications as a previous high school secretary. In the following days Mr. Correra ordered Plaintiff to transfer $2000 from the 911 fund to the energy management fund to help offset the cost of office furniture for Ms. Resendez's new office. The total cost for the office furniture for Ms. Resendez was

approximately $4000. It's important to note that this was an hourly clerk position requesting brand new furniture for an office that was already furnished.

16. Ms. Resendez also began having conflicts in her department. Mr. Correra called Plaintiff on June 16, 2020, during her personal time at breakfast and ordered Plaintiff to handle the situation between Veronica Deleon and Resendez, both who were from a different department and had their own supervisors. An associate superintendent wanted Plaintiff to handle a dispute regarding office supplies in another department. The correct person to deal with this issue would have been Melissa Crizer. However, Mr. Correra broke all protocol and demanded Ms. Escalante fix the issue.

17. In August of 2020, Ms. Escalante received the first negative evaluation ranking her proficient to unsatisfactory from Mr. Correra since she began working for the district in 2005. Mr. Correra alleged that this was due to Ms. Escalante assisting Arnold Anderson who was the head of the Environmental Compliance department. Ms. Escalante assisted Mr. Anderson because he did not have a secretary. Mr. Anderson also received a negative evaluation.

18. Mr. Correra commented on Ms. Ecalante's evaluation that she was not collaborating with colleagues. By this time, Ms. Escalante had been mistreated by Mr. Correra so much that she was constantly nervous, frazzled and stressed. Afraid of committing mistakes, Ms. Escalante committed more mistakes while being constantly stressed by Mr. Correra.

19. Mr. Correra became a micromanager and controlling. Ms. Escalante was afraid of doing anything. Her job had been a place where she was once happy and comfortable was now turning into a very stressful and hostile environment.

20. In Ms. Escalante's effort to improve her work environment she spoke to Mr. Correra regarding her evaluation. Ms. Escalante told Mr. Correra that she was having a problem digesting her evaluation. She told him that she was not sure of what was happening. Plaintiff said she would

gladly switch positions with Yvette Resendez and offer to keep it confidential if that would make him happy.

21. Mr. Correra took a few seconds to respond, "no I don't want her over here." He told Ms. Escalante that he called certain people such as Nita Balch (a secretary), Leticia Guerrero (construction secretary), LeighAnn Johnson (department head), and Kenny Kendrick (director of maintenance) and y asked them about Ms. Escalante's work ethics and if there was anything that she had done to offend them. He admitted he was just fishing for information to add to Ms. Escalante's evaluation.

22. Leticia Guerrero's complaint about Ms. Escalante was unjustified. Leticia Guerrero told Nolan Correra that when Ms. Escalante took her shopping to show her how to use the District's purchasing card that she was very direct in saying that "remember this is taxpayer money and we need to be very careful on how we use it" and "just always ask yourself is there a less expensive brand."

23. Ms. Guerrero was attempting to criticize Ms. Escalante with these accounts. Ms. Escalante was the person who recommended Ms. Guererro for hire. Ms. Escalante had a valid point of warning anyone with the district's credit card to purchase things with taxpayers in mind. This was viewed negatively by Defendant. Mr. Correra stated that people were upset with him because of Ms. Escalante. Mr. Correra's harassing and aggressive behavior escalated after this meeting.

24. On August 19, 2020, Mr. Correra aggressively asked Ms. Escalante because she went into his Applitrack account. Ms. Escalante explained that, like she had done in the past, she just looked at the applicants and gave him a report of who was applying for the Bond Accountant position he posted. She reminded him that this was his pattern and practice and the way she always worked. He responded with "I didn't ask you to."

25. It became clear that as of June 2020 Ms. Resendez still did not have her new furniture. Ms. Resendez had two months to train and learn how to submit a requisition for her own furniture with the guidance from Veronica Deleon but Mr. Correra circumvented protocol once again, in the interest of cutting waiting time demanded that Ms. Escalante put in the request. When the furniture came in Ms. Resendez did not approve of it and she claimed it was the wrong pieces. She ended up not using the new furniture and left the new furniture at her first assigned office.

26. During this time Mr. Correra was making more clear violations of protocol. He orchestrated that two departments move to the maintenance building, where he is located, because they allegedly needed more supervision. One of the departments was Ms. Resendez's. The very next week, after the departments had packed up their offices and were ready to move, Mr. Correrra suddenly changed his mind and decided that ONLY Ms. Resendez needed to move into the maintenance building. He offered her a bigger office because otherwise the office she would have been assigned to would not have accommodated her new furniture. He canceled the move of two departments to accommodate Ms. Resendez. This motivated Resendez to act as if she was untouchable. She threw her weight around the entire office with no regard for protocol because she knew, whatever she did, Mr. Correra would approve and support her.

27. She walked around maskless in the office against policy.

28. On September 3, 2020, at a flood gate demo Ms. Escalante acknowledged everyone in the energy management and wholly ignoring Plaintiff.

29. Plaintiff missed a punch in and asked Mr. Correra to adjust her punch-in for the day. Mr. Correra constantly watched Ms. Escalante's Kronos. It became very evident that Mr. Correra was suddenly micro-managing Plaintiff's activities.

30. It was brought to Plaintiff's attention that Ms. Resendez's clock-ins were cause for concern

31. On September 15, 2020, there was a Board Building and Planning meeting. Mr. Correra had assigned both Plaintiff and Ms. Resendez (please remember this is an hourly manual clerk) to take minutes for this meeting. Mr. Correra clearly assigned Ms. Escalante's job duties to Ms. Resendez. Mr. Correrra demanded to see Ms. Escalante's notes right after the meeting without time to edit. The next day Mr. Correrra complimented Ms. Escalante and stated he had not challenged her enough.

32. On or about October 15, 2020, Ms. Resendez was again ordering new furniture for her new office relocated to the maintenance building. She proposed new furniture since the last $4000 set did not work for her in her clerk position. Considering the last leadership meeting employees were all informed to be frugal with the budget due to the effect of the pandemic and the district still recuperating from hurricane Harvey, it was surprising to see that Mr. Correrra approved the order that was sent to Kelly Durney, the new Bond Accountant for Ms. Resendez's new (and unnecessary) furniture. To wit, Plaintiff spoke out to Defendant in opposition of the unnecessary and wrongful spending of District funds.

33. On October 19, 2020, the Energy Management department was planning a farewell party for Melissa Crizer. She was a manager who commented that her department was now being micromanaged by Mr. Correra since the hiring of Ms. Resendez. Normally the plans for these events were discussed with Ms. Escalante as she was the division secretary and costs, and expenses were her responsibilities. Defendant failed to follow protocol as Ms. Resendez circumvented Ms. Escalante and told Veronica Deleon (data specialist) and Leticia (construction secretary) that she would "talk to Mr. Resendez."

34. The next day on October 20, 2020, Mr. Correra had a meeting with Ms. Escalante. He berated her for ordering drinks for the farewell party. Ms. Escalante performed exactly as she had

been for the previous four years. During this meeting, Mr. Correra yelled and demanded why she did not tell him about the process of purchasing drinks. Plaintiff was confused as to what caused the anger that Mr. Correra was exhibiting towards her. He continued yelling at Ms. Escalante despite her crying, hyperventilating, and sobbing. The meeting continued for an hour and a half where Mr. Correra ultimately threatened Ms. Escalante with termination stating "come December if we cannot fix this (pointing at Ms. Escalante and himself) you will have to start looking elsewhere. You are an at-will employee, and I will not recommend you stay at your current position." By the time the meeting was over, it was 3:30pm. Ms. Escalante, distraught and in tears, gathered her belongings, clocked out and went home.

35.     The next day, on October 21, 2020, Ms. Escalante intended to report to work. However, on her way there, she found herself pulling over on the side of the road and sending a text to Mr. Correra explained she was not feeling well. Ms. Escalante then saw her primary doctor and cardiologist. The cardiologist scheduled a series of tests and ordered a twenty-four-hour heart monitor and thirty-day heart monitor for any abnormality or palpitation with a follow up in December. Ms. Escalante took the rest of the week off of work. Her blood pressure finally normalized on Saturday October 24, 2020. While off she also made an appointment to see her primary doctor who documented the maltreatment from Mr. Correra and prescribed her clonazepam for anxiety.

36.     The hostility between Mr. Correra and Ms. Escalante was clear and evident to colleagues. Steven Hadley was present at a meeting on November 10, 2020, after which he stated "WOW, I didn't realize things had gotten that bad between you two." The same day, Ms. Escalante decided to submit her resignation with documentation of the protocol violations by Mr. Correra and Ms. Resendez.

37. As of February 3, 2022, Nolan Correra unexpectedly resigned after a brief meeting with administration and was assigned to administrative leave. Yevette Resendez is also no longer employed by Humble ISD.

38. Plaintiffs bring this action under 20 U.S.C. § 1682, 42 U.S.C. §§ 1983; the Fourteenth Amendment to the United States Constitution and other constitutional provisions and laws of the United States and the State of Texas, to recover damages resulting from Defendant's conduct for the deprivation of Ms. Escalante's rights under color of law and in violation of federal law.

## IV.
## STATE ACTION

39. To the extent applicable, Defendant were acting under color of state law when they subjected Ms. Escalante to the wrongs and injuries hereinafter set forth.

## V.
## CAUSES OF ACTION

### COUNT ONE:
### CLAIMS UNDER 20 U.S.C. § 1682

40. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

41. Humble ISD is a public educational system that receives federal financial assistance from the United States government and is subject to the applicability of Title IX of the Education Act of 1972, 20 U.S.C.A. § 1682.

42. All actors were employees of Humble ISD, and all were vested with the power and authority to address the spending of funds allocated to the district. Plaintiff has suffered damages in an amount in excess of the jurisdictional limits of this Court.

**COUNT TWO:**
**CLAIMS UNDER 42 U.S.C. §1983 FOR DENIAL OF EQUAL PROTECTION UNDER THE LAW AS REQUIRED BY THE 1st and 14TH AMENDMENT TO THE U.S. CONSTITUTION**

43. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

44. As a female of Hispanic national origin is a member of identifiable classes.

45. As supervisors at a state-run institution, the assistant superintendent had fiduciary duty under the Texas Education Code.

46. The Defendant, acting under color of law and acting pursuant to customs, practices and policies, official and/or unofficial, of Humble ISD interfered and retaliated against Plaintiff for exercising her rights and privileges secured to her by the First and Fourteenth Amendment to the United States Constitution and by other laws of the United States, by failing to limit the use of school district local funds in accordance with Tex. Educ. Code § 45.105(c) and retaliating against her for speaking regarding a public concern related provisions of federal law and in violation of the above cited constitutional provisions.

47. Humble ISD has official policies pursuant to the Texas Education Code and Humble ISD developed policies and procedures to ensure district expenditures would be used for legitimate public purpose and not merely private ends.

48. In addition, Humble ISD failed to adequately train its employees regarding responding to and conducting investigations of misappropriation of funds. This failure to train its employees in a relevant respect reflects a deliberate indifference to the rights of taxpayers and is actionable under 42 U.S.C. § 1983.

49. Defendant, acting through official and/or unofficial policies, practices, and/or customs, and with deliberate, callous, and conscious indifference to Ms. Escalante's constitutional rights

failed to implement the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance against misappropriation of taxpayer funds.

50. For instance, the following conduct, policies, and accepted customs, *inter alia*, by Defendant violated Ms. Escalante's constitutional rights:

    a. Humble ISD's failure to adequately train employees how to properly spend taxpayer funds;
    b. Failure to properly discipline its employees;
    c. Failure to protect Ms. Escalante from harassment and verbal abuse;
    d. Failure to follow the requirements of the Texas Education Code and Texas Administrative Code requiring the limits the use of school district local funds to purposes necessary in the conduct of the public schools determined by the board of trustees. Tex. Educ. Code § 45.105(c).

51. In addition, Humble ISD and the School Officials failed and refused to adopted implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the handling of unbudgeted expenditures. In addition to interfering with Plaintiff's Constitutional rights, Defendant retaliated against Plaintiff for asserting those Constitutional rights.

## COUNT THREE:
## FAILURE TO ADEQUATELY TRAIN, SUPERVISE AND DISCIPLINE EMPLOYEES

52. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

53 Defendants failed to properly train employees, administrators and other staff on the official policies regarding the Texas Education Code.

54. Humble ISD failed to adequately train and discipline its employees in the handling and investigation of allegations of misappropriation of taxpayer funds.

## COUNT FOUR:
## NEGLIGENCE AND GROSS NEGLIGENCE

55.     Plaintiffs reallege and incorporate by reference each of the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

56.     Humble ISD and School Officials owed a duty to Plaintiff with a safe working environment in which she would be able to carry out her duties as described in the Texas Education Code.

57.     Accordingly, by their actions described herein, Defendants breached their duty and were negligent, grossly negligent and/or acted with malice in at least the following regards:

   a. Failing to conduct a reasonable investigation into the relationship between Mr. Correra and Ms. Resendez.
   b. Failure to adequately train employees how to properly use taxpayer funds to purchase office supplies and equipment;
   c. Failure to instruct and supervise employees regarding the importance of following protocol regarding job duties;
   d. Failure to follow the requirements of the Texas Education Code and Texas Administrative Code requiring the expenditure of funds be used in the manner specified in the budget adopted by the board;
   e. Negligent implementation of existing policies;
   f. Negligent hiring, retention and assignments;
   g. Negligent supervision, training, and direction;

58.     No reasonably competent official would have concluded that the actions of the School Administrators would not lead to injury and damages to Plaintiff.  In other words, no reasonably prudent administrator or employee, under similar circumstances, could have believed that their conduct was justified.

59.     Defendant's conduct described above constitutes gross negligence, recklessness, and/or intentional misconduct.

## COUNT FIVE:
## INFLICTION OF EMOTIONAL DISTRESS

60.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

61. Defendants owed to Plaintiff a duty to provide her a safe working environment consistent with her constitutional and statutory rights and to perform a reasonable investigation into the improper spending and inter-office relationship.

62. Defendants breached their duty to Plaintiff in one or more of the following ways, *inter alia*:

    a. Failing to conduct a reasonable investigation into the relationship between Mr. Correra and Ms. Resendez;

    b. Failure to adequately train employees how to properly recognize and prevent improper spending of funds;

    c. Failure to follow the requirements of the Texas Education Code and Texas Administrative Code requiring the expenditure of funds be used in the manner specified in the budget adopted by the board;

    d. Negligent implementation of existing policies;

    e. Negligent hiring, retention and assignments;

    f. Negligent supervision, training, and direction;

    g. Negligent failure to discipline administrators, staff, and investigating officers.

63. Defendant's breach of their duty to Ms. Escalante arose to the level of recklessness and gross negligence.

64. Defendant's breach of their duty to Ms. Escalante was a direct and proximate cause of Ms. Escalante being repeatedly harassed by Mr. Correra and Ms. Resendez to the point where Ms. Escalante saw no other alternative but to resign.

65. Defendant's breach of duty directly and proximately caused Plaintiff to suffer damages from emotional distress from the harassment.

66. Defendant knew or should have known that their conduct involved an unreasonable risk of causing emotional distress to Plaintiff.

67. Defendant's conduct caused Plaintiff to suffer medically diagnosable and significant emotional distress.

68.  Defendant's acts and omissions demonstrated a conscious disregard for Plaintiff's emotional well-being and safety, such that an award of punitive damages is warranted.

## DAMAGES

69.  Defendant's acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff, for which Plaintiff seek recovery through this Complaint:

    h.    Actual damages;

    i.    Past, present, and future medical expenses for physical, emotional and mental health;

    j.    Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish;

    k.    Pain and suffering, emotional distress, and mental anguish suffered by Plaintiff;

    l.    Loss of quality and enjoyment of life;

    f.    Loss of earnings and contributions;

    g.    Exemplary and punitive damages as well as reasonable attorneys' fees and costs of court;

    h.    Plaintiffs should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

    i.    Prejudgment interest; and

    j.    Post judgment interest.

70.  Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## CONDITIONS PRECEDENT

71.  Defendant had actual notice of Plaintiffs' injuries complained of herein when Ms. Escalante submitted her resignation. The Defendant is not immune from suit or liability. Any conditions precedent has occurred, been performed, or have been waived.

**DEMAND FOR JURY**

72. Plaintiff hereby makes demand for a jury trial.

**PRAYER**

Wherefore, Premises Considered, Plaintiff prays that Defendant be cited to appear and answer herein and, upon final trial hereof, that Plaintiff has and recover from Defendant the Plaintiff's actual damages, exemplary damages, pre and post-judgment interest, costs of court, attorneys' fees, and such other and further relief, both general and special, at law and in equity, to which they may be justly entitled.

Respectfully Submitted,



_____
Alfonso Kennard, Jr.
SDTX ID. 713316
Texas Bar No.: 24036888
Alfonso.Kennard@kennardlaw.com
Ellen Sprovach
SDTX ID. 22202
Texas State Bar ID 24000672
Ellen.Sprovach@kennardlaw.com
Samantha Cobb
SDTX ID: 3757644
Texas SBN: 24120210
Samantha.Cobb@kennardlaw.com
Kennard Law, P.C.
5120 Woodway Dr., Suite 10010
Houston, Texas 77056
(713) 742-0900
(832) 558-6670 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**